193 P.3d 181 (2008)
STATE of Washington, Respondent,
v.
Gonzalo GARCIA Jr., Appellant.
No. 26037-2-III.
Court of Appeals of Washington, Division 3.
September 23, 2008.
*182 Eric J. Nielsen, Christopher Gibson, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
*183 Andrew Kelvin Miller, Benton County Prosecutors Office, Megan Ann Bredeweg, Attorney at Law, Kennewick, WA, for Respondent.
SWEENEY, J.
¶ 1 Store personnel may detain a suspected shoplifter if they have reasonable grounds to believe the person is committing or attempting to commit theft or shoplifting. State v. Miller, 103 Wash.2d 792, 795, 698 P.2d 554 (1985); State v. Johnston, 85 Wash. App. 549, 554, 933 P.2d 448 (1997). And a private citizen may detain a person for a misdemeanor if it (1) constitutes a breach of the peace and (2) is committed in the citizen's presence. State v. Gonzales, 24 Wash.App. 437, 439, 604 P.2d 168 (1979). Here, Ranch and Home's owner and employees suspected Gonzalo Garcia Jr. of shoplifting from their store. Mr. Garcia fled Ranch and Home and entered the neighboring store, Shopko. Antonio Moran worked for Shopko and attempted to detain Mr. Garcia for Ranch and Home when Mr. Garcia pushed him. Mr. Moran was not a Ranch and Home employee and did not observe the shoplifting. We therefore reverse Mr. Garcia's conviction for third degree assault because he did not assault Mr. Moran in an attempt to resist lawful detention, as charged. And we remand for entry of judgment and sentencing for fourth degree assault.

FACTS
¶ 2 Ranch and Home's "Sensormatic" (theft security alarm) sounded when Gonzalo Garcia Jr. left the store. Ranch and Home's owner, Jeffrey Dress, followed Mr. Garcia to the parking lot where he asked Mr. Garcia to stop. Mr. Garcia said no and ran. He escaped into an adjacent store, Shopko, after an unsuccessful attempt to flee in a car.
¶ 3 Mr. Dress sent Ranch and Home employee, Jesus Sanchez, to Shopko to tell Shopko personnel about Mr. Garcia and to ask for help. Shopko did not have a written or verbal contract to provide security for Ranch and Home.
¶ 4 Mr. Sanchez told Antonio Moran, Shopko loss prevention investigator, that a person shoplifted merchandise from Ranch and Home and then ran into Shopko. Mr. Moran alerted his supervisor, Debbie Stovall. Ms. Stovall ordered Mr. Moran to follow Mr. Garcia around Shopko. She directed him to detain Mr. Garcia when he left the store. Mr. Moran approached Mr. Garcia as Mr. Garcia left the store. He identified himself as store security, showed Mr. Garcia his badge, and told him to stop. Mr. Garcia then pushed Mr. Moran and left the store.
¶ 5 Shopko and Ranch and Home employees then wrestled Mr. Garcia to the ground and detained him until police arrived.
¶ 6 The trial court convicted Mr. Garcia of third degree assault for pushing Mr. Moran.

DISCUSSION

FINDINGS OF FACT AND CONCLUSIONS OF LAW
¶ 7 Mr. Garcia first asks this court to remand his case to the trial court for entry of written findings of fact and conclusions of law. They have since been filed. Clerk's Papers at 42-44.
¶ 8 He correctly points out that a trial court must enter findings of fact and conclusions of law in a case tried without a jury. CrR 6.1(d). Here, they were filed late, and that is a bad practice. State v. Cannon, 130 Wash.2d 313, 329, 922 P.2d 1293 (1996). The trial judge is put in a difficult position of trying to remember his or her essential findings and the reasons for a decision when findings and conclusions are presented many months after the trial. And late findings increase the potential for criticism that they are tailored to avoid reversal when, as here, they are presented after the initial appellate briefing.
¶ 9 Nonetheless, findings and conclusions may be entered even while an appeal is pending if the defendant is not prejudiced by their entry. Id. And there is no showing of prejudice here. Indeed, they mirror the court's oral findings and conclusions. Report of Proceedings (RP) at 80-81, 107, 109.

LAWFUL DETENTIONAGENCY
¶ 10 Mr. Garcia argues that the trial court erred when it found him guilty of third *184 degree assault because he resisted an unlawful detention when he pushed Mr. Moran, Shopko's loss prevention investigator. He contends that the attempted detention was unlawful because Mr. Moran was not Ranch and Home's agent.
¶ 11 Mr. Garcia committed third degree assault if, and only if, he assaulted Mr. Moran with intent to resist lawful detention. RCW 9A.36.031(1)(a). The question then is whether Mr. Moran's attempt to detain Mr. Garcia was lawful. That is a question of law and so we review de novo. State v. Law, 110 Wash.App. 36, 39, 38 P.3d 374 (2002).
¶ 12 Mr. Garcia admits that he pushed Mr. Moran to resist detention. He argues that Mr. Moran did not have legal authority to detain him because he was not Ranch and Home's agentRanch and Home did not control Mr. Moran's actions. The State maintains that Mr. Moran had legal authority to detain Mr. Garcia because Ranch and Home asked for help and he helped. He alerted his supervisor, followed Mr. Garcia around Shopko, and tried to stop Mr. Garcia before he left the building.
¶ 13 Both parties suggest that statutes authorize a shopkeeper's agent to lawfully detain a thief whom the agent reasonably believes was shoplifting. See RCW 9A.16.080[1] and RCW 4.24.220 (civil equivalent to RCW 9A.16.080).
¶ 14 But "an agency relationship results from the manifestation of consent by [the principal] that [the agent] shall act on his behalf and subject to his control, with a correlative manifestation of consent by the [agent] to act on his behalf and subject to his control." Moss v. Vadman, 77 Wash.2d 396, 402-03, 463 P.2d 159 (1969). Both the principal and the agent must consent to the relationship. Hewson Constr., Inc. v. Reintree Corp., 101 Wash.2d 819, 823, 685 P.2d 1062 (1984). The right to control the manner of performance is essential to prove agency. Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc., 28 Wash.App. 669, 674, 626 P.2d 30 (1981). "`[T]he existence of the right of control, not its exercise, ... is decisive.'" Pagarigan v. Phillips Petrol. Co., 16 Wash. App. 34, 37, 552 P.2d 1065 (1976) (quoting Poutre v. Saunders, 19 Wash.2d 561, 565, 143 P.2d 554 (1943)). Mr. Moran was an agent of Ranch and Home only if Ranch and Home had the power to control (i.e., guide or manage) Mr. Moran's actions at the time of the assault.
¶ 15 The findings of fact here do not support the conclusion that Ranch and Home had an agency relationship with Shopko. In fact, they make no mention of Ranch and Home's right to control the manner of Mr. Moran's performance.
¶ 16 And our review of the testimony suggests there is no evidence to support the conclusion of an agency relationship. Shopko did not have a duty to provide security for Ranch and Home. Neither Mr. Moran nor Ms. Stovall, Mr. Moran's supervisor, asked Ranch and Home personnel how to go about detaining Mr. Garcia. Shopko's Ms. Stovall orchestrated Mr. Garcia's apprehension without directions from Ranch and Home. She told Mr. Moran to follow Mr. Garcia around the store and detain him as he left the store. Ranch and Home's employee, Mr. Sanchez, was with Ms. Stovall when she gave Mr. Moran his orders. Mr. Sanchez wanted Shopko to handle the situation. Ranch and Home did not control his actions. Mr. Moran was not Ranch and Home's agent when Mr. Garcia assaulted him. See Bloedel Timberlands, 28 Wash.App. at 674, 626 P.2d 30.

LAWFUL DETENTIONCITIZEN'S ARREST
¶ 17 Merchants may, however, detain a suspected shoplifter if they have reasonable *185 grounds to believe the person is committing or attempting to commit theft or shoplifting. Miller, 103 Wash.2d at 795, 698 P.2d 554; Johnston, 85 Wash.App. at 554, 933 P.2d 448. The right derives from the common law right of citizen's arrest. Miller, 103 Wash.2d at 795, 698 P.2d 554.
¶ 18 But the cases that establish the shopkeeper's common law privilege are factually distinguishable from this case. In Miller and Johnston, an employee of the victimized store detained the suspected shoplifter. Miller, 103 Wash.2d at 793, 698 P.2d 554; Johnston, 85 Wash.App. at 552, 933 P.2d 448. Here, Mr. Moran, a Shopko employee and not a Ranch and Home employee, did not observe the shoplifting. He nevertheless attempted to detain Mr. Garcia. We find no authority, then, that would allow Mr. Moran to lawfully detain Mr. Garcia under the shopkeeper's privilege.
¶ 19 Nor does the common law privilege of citizen's arrest apply here. A private person may arrest another for a misdemeanor if it (1) constitutes a breach of the peace and (2) is committed in that person's presence. Gonzales, 24 Wash.App. at 439, 604 P.2d 168. Again, Mr. Garcia did not commit the alleged misdemeanor (theft) in Mr. Moran's presence. And, in any event, no Washington case says that theft constitutes a "breach of the peace." See, e.g., City of Seattle v. Camby, 104 Wash.2d 49, 53, 701 P.2d 499 (1985) (words of degrading character addressed to another may breach the peace); Stone Mach. Co. v. Kessler, 1 Wash.App. 750, 754-57, 463 P.2d 651 (1970) (force, constructive force, or intimidation used to repossess property when the defaulting party offers physical resistance constitutes breach of the peace).
¶ 20 Mr. Garcia therefore was not resisting a lawful arrest when he assaulted Mr. Moran. And that is clearly a requirement of the statute under which he was prosecuted. RCW 9A.36.031(1)(a) ("A person is guilty of assault in the third degree if he ... [w]ith intent to prevent or resist ... the lawful apprehension or detention of himself ... assaults another" (emphasis added)). Mr. Moran did not have the shopkeeper's privilege or the citizen's right to arrest Mr. Garcia. The State did not, therefore, prove that Mr. Garcia committed third degree assault with intent to prevent or resist lawful apprehension on this evidence and these findings. Id. We vacate the third degree assault conviction.
¶ 21 A criminal defendant may be convicted at trial on the charged offense or "any degree inferior thereto." RCW 10.61.003. This statute gives a defendant sufficient notice that he must also defend himself against lesser degrees of the offense charged. State v. Foster, 91 Wash.2d 466, 471-72, 589 P.2d 789 (1979). Consequently, when an appellate court finds the evidence insufficient to support a conviction for the charged offense, it will direct a trial court to enter judgment on a lesser degree of the offense charged when the lesser degree was necessarily proven at trial. E.g., State v. Gilbert, 68 Wash.App. 379, 384-87, 842 P.2d 1029 (1993) (extensive citation of cases); State v. Miles, 77 Wash.2d 593, 601-04, 464 P.2d 723 (1970); State v. Bucknell, 144 Wash. App. 524, 530, 183 P.3d 1078 (2008); State v. Maganai, 83 Wash.App. 735, 740, 923 P.2d 718 (1996); State v. Atterton, 81 Wash.App. 470, 473, 915 P.2d 535 (1996); State v. Robbins, 68 Wash.App. 873, 877, 846 P.2d 585 (1993); State v. Cobelli, 56 Wash.App. 921, 925-26, 788 P.2d 1081 (1989); State v. Brown, 50 Wash.App. 873, 878-79, 751 P.2d 331 (1988); State v. Kovac, 50 Wash.App. 117, 121, 747 P.2d 484 (1987); State v. Liles, 11 Wash.App. 166, 173, 521 P.2d 973 (1974).
¶ 22 Fourth degree assault is an assault that does not amount to custodial assault or first, second, or third degree assault. RCW 9A.36.041. It is a lesser degree offense of third degree assault. Compare RCW 9A.36.041 and RCW 9A.36.031. Here, the trial court found that Mr. Garcia assaulted Mr. Moranthat he pushed him. These findings necessarily constitute a finding of every element of fourth degree assault. We, therefore, remand to the trial court to enter judgment and sentence for fourth degree assault.

SUPPLEMENTAL ASSIGNMENT OF ERROR
¶ 23 Mr. Garcia argues in his supplemental brief that the court erred when it imposed a *186 sentence that exceeds the statutory maximum sentence for third degree assault. We do not address this assignment of error because we reverse Mr. Garcia's conviction for third degree assault.

STATEMENT OF ADDITIONAL GROUNDS
¶ 24 Mr. Garcia also filed a statement of additional grounds for relief. He first argues that Mr. Moran was not Ranch and Home's agent and therefore did not have authority to detain him. We have addressed this argument.
¶ 25 Mr. Garcia next argues, on authority of RCW 4.24.220, that he was not detained in the vicinity of Ranch and Home. That statute does not apply here. It is an immunity statute for civil actions against mercantile establishments. And this is a criminal prosecution.
¶ 26 Mr. Garcia also argues that the State did not prove all elements of the federal assault statute. Mr. Garcia was charged under Washington's assault statute. It is not analogous to the statute that Mr. Garcia refers to. The State was not required to prove the elements of the federal assault statute.
¶ 27 Mr. Garcia further contends that the State failed to prove that Mr. Moran was acting in his official capacity at the time of the assault. The State need only prove this element if the assault victim is a police officer. See RCW 9A.36.031(1)(g). Mr. Garcia was charged under RCW 9A.36.031(1)(a). That section does not require the State to show that Mr. Moran was performing his official duties at the time of the assault.
¶ 28 Finally, Mr. Garcia claims that the assault was excusable because he did not know that Mr. Moran was an agent. The argument is moot given our disposition here.
¶ 29 We reverse Mr. Garcia's conviction for third degree assault and remand for entry of judgment and sentencing for fourth degree assault.
I CONCUR: KORSMO, J.
SCHULTHEIS, C.J. (dissenting).
¶ 30 I agree with the majority that insufficient evidence supports Gonzalo Garcia Jr.'s conviction for third degree assault. I also agree that under certain circumstances when we reverse a conviction for insufficient evidence, we have the power to remand for entry of judgment and sentence on a lesser included offense, but this is not such a case.[1] Therefore, I respectfully dissent.
¶ 31 Citing State v. Gilbert, 68 Wash.App. 379, 385, 842 P.2d 1029 (1993), the majority points out that in Washington an appellate court "will direct a trial court to enter judgment on a lesser degree of the offense charged when the lesser degree was necessarily proven at trial." Majority at 185. Noting RAP 12.2 is a source of this power, the Gilbert court remanded for entry of judgment and sentence for residential burglary after vacating a first degree burglary conviction for insufficient evidence. Gilbert, 68 Wash.App. at 384, 388, 842 P.2d 1029.
¶ 32 RAP 12.2 provides that this court "may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require." Despite its reference to this rule, the Gilbert court did not explain how a sentencing remand served the interest of justice or provide any guidelines for application of the rule. Similarly here, the majority appears to assume that a sentencing remand serves the interest of justice, but fails to explain how this is so. Such cursory exercise of our sentencing remand power is improper.
¶ 33 RAP 12.2 should be used with care and only when the ends of justice merit it. We have interpreted this rule to mean that an appellate court may "take any action required by the merits of the case and the interests of justice." State v. Diana, 24 Wash.App. 908, 913, 604 P.2d 1312 (1979)(emphasis added). In Diana, we articulated how justice was served when we considered an argument on appeal that the defendant failed to raise at trial. Id. But what are the demands of justice here?
*187 ¶ 34 First, I am troubled by this court's exercise of its sentencing remand power when the State failed to request such disposition on appeal. Generally, we follow the rule that the parties present the issues on appeal. RAP 10.3(g) provides that "[t]he appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." Further, RAP 12.1(a) provides that generally "the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs." These rules support the principle that appellate courts serve as neutral arbiters of matters the parties present and should generally refrain from granting relief that was not requested on appeal.
¶ 35 Although I could find no Washington case on point, other jurisdictions, both federal and state, require the state to request a sentencing remand before the appellate court will consider doing so. For example, in United States v. Dinkane, 17 F.3d 1192, 1198 (9th Cir.1994), this requirement is part of a three-part test that must be met before an appellate court may order a sentencing remand. In United States v. Grey Bear, 836 F.2d 1086, 1087-88 (8th Cir.1987), the court stated that the government waives a lesser included offense issue on appeal by failing to raise it in the district court or in its opening appellate brief. South Carolina also requires that the government request a sentencing remand as a prerequisite to an appellate court considering the option. State v. Brown, 360 S.C. 581, 594, 597, 602 S.E.2d 392 (2004).
¶ 36 A recent United States Supreme Court case aptly states the rationale for the party presentation rule. In Greenlaw v. United States, ___ U.S. ___, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), the Eighth Circuit added 15 years to the appellant's sentence, deciding without government invitation or argument, that the law required a longer sentence. The State argued that under 28 U.S.C. § 2106,[2] which is nearly identical to RAP 12.2, the court had the power to increase the sentence on its own initiative. The Supreme Court disagreed, ultimately holding that absent a government appeal or cross-appeal, the Eighth Circuit could not, on its own initiative, increase the defendant's sentence. Greenlaw, 128 S.Ct. at 2564. Justice Ginsberg, writing for the majority, reasoned,
In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a pro se litigant's rights.
Id.
¶ 37 She also wrote, "`[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do.'" Id. (alteration in original)(quoting United States v. Samuels, 808 F.2d 1298, 1301 (8th Cir. 1987)). Based on the foregoing principles, a sua sponte sentencing remand is improper.
¶ 38 Second, a sentencing remand effectively rescues the State from a failed trial strategy. At trial, the State chose to proceed on the sole charge of third degree assault, declining to give the judge the option of convicting Mr. Garcia of fourth degree assault. In doing so, it hoped that the judge would convict on the greater offense. However, its failure to give the court the option of convicting Mr. Garcia of the lesser offense increased the risk of an unwarranted conviction. See Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973)("Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, *188 the jury is likely to resolve its doubts in favor of conviction." (emphasis added)). Indeed, on appeal, we concluded that the State did not prove all of the elements of third degree assault.
¶ 39 Washington cases permit appellate courts to order sentencing remands even when the fact finder has not been explicitly instructed on the lesser included offense as long as it is clear that the fact finder necessarily found each element of the lesser included offense in reaching its verdict. See Gilbert, 68 Wash.App. at 385, 842 P.2d 1029; State v. Brown, 50 Wash.App. 873, 878, 751 P.2d 331 (1988). Applying this rule, the majority justifies a sentencing remand because the trial court's findings "necessarily constitute a finding of every element of fourth degree assault." Majority at 185.
¶ 40 However, this finding leads to my third objection. As an appellate court, we do not sit as fact finders; it is improper for us to substitute our judgment of guilt for that of the trial judge or jury. There is a "crucial distinction between an appellate court finding evidence in the record sufficient to support a jury verdict and a jury finding the evidence sufficient to prove guilt beyond a reasonable doubt." State v. Myers, 158 Wis.2d 356, 366-67, 461 N.W.2d 777 (1990).
¶ 41 My objection is reinforced by the fact that Mr. Garcia was not allowed to defend himself against a fourth degree assault charge. Because he was not charged with fourth degree assault, Mr. Garcia may have foregone a particular defense or strategy at trial. The record shows that his only argument at trial was that he was not guilty of third degree assault because his detention by Antonio Moran was not lawful. I can only speculate as to other strategies or defenses Mr. Garcia may have employed had he been charged in the alternative with fourth degree assault. Mr. Garcia formulated a specific trial strategy based on the sole charge of third degree assault. It is therefore improper for us to find him guilty of fourth degree assault in the absence of his right to defend against that charge.
¶ 42 Finally, Mr. Garcia is serving a 50-month sentence for a crime he did not commit. In view of this injustice, a sentencing remand serves no purpose except to undermine the public's faith that we are neutral arbiters of justice.
¶ 43 For all of these reasons, it is highly improper for this court, on its own initiative, to remand for entry of judgment and sentence for fourth degree assault. The exercise of our sentencing remand powers should be used in a principled way and only when the ends of justice demand that it be done. This standard is not met here. Therefore, I would simply reverse and dismiss Mr. Garcia's third degree assault conviction.
NOTES
[1] RCW 9A.16.080 states, in part: "In any criminal action brought by reason of any person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of any merchandise, it shall be a defense of such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by a peace officer, or by the owner of the mercantile establishment, or by the owner's authorized employee or agent, and that such peace officer, owner, employee, or agent had reasonable grounds to believe that the person so detained was committing or attempting to commit theft or shoplifting on such premises of such merchandise."
[1] I refer to this option as a "sentencing remand."
[2] 28 U.S.C. § 2106 reads: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment ... lawfully brought to it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."